IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| OAKVIEW CONSTRUCTION, INC., | ) ) | Case No. CIV-10-235-D |
| Defendant-Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| ROWE CONSTRUCTION CO., *et al.*, | ) ) ) | |
| Third Party Defendants. | ) ) | |

**O R D E R**

Before the Court is Third Party Defendants' Motion to Dismiss for Failure to Obtain Sufficient Service of Process, Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Case to the Central District of Illinois [Doc. No. 22], filed pursuant to Fed. R. Civ. P. 12(b)(2), (3), (4) and (5), and 28 U.S.C. § 1404(a) or § 1406(a). Defendant-Third Party Plaintiff Oakview Construction, Inc. ("Oakview") has responded in opposition to the Motion to Dismiss but, alternatively, in support of the Motion to Transfer. *See* Def.'s Resp. Br. [Doc. No. 33]. Plaintiff Love's Travel Stops & Country Stores, Inc. has responded in opposition to the Motion solely with regard to the issues of proper venue and a permissive transfer. *See* Pl.'s Resp. Br. [Doc. No. 32]. Third Party Defendants Rowe Construction Co. ("Rowe") and Travelers Casualty and Surety Company of America ("Travelers") have replied [Doc. Nos. 36, 37]. Thus, the Motion is fully briefed and at issue.

Plaintiff commenced this action in state court on February 5, 2010, with a petition asserting claims of breach of contract, breach of express warranty, and negligence related to a construction project in LeRoy, Illinois. Plaintiff alleged as follows: Oakview served as the general contractor for the project; their written agreement contained a three-year warranty as to asphalt, concrete paving, and dirt work; the project was completed in December, 2007; pavement problems arose in July, 2008; the cause of the problems was disputed; Oakview denied responsibility and refused to repair the defective roadways; Plaintiff hired a third party to make repairs in 2009; and Oakview has refused to reimburse Plaintiff for the cost of repairs. Oakview timely removed the case to federal court based on allegations of diversity jurisdiction under 28 U.S.C. § 1332, namely, that Plaintiff is a citizen of Oklahoma, Oakview is a citizen of Iowa,[1] and Plaintiff's alleged damages exceed $75,000. After removal, Oakview answered and filed its Third Party Complaint against Rowe, as the subcontractor for dirt and paving work on the project, and Travelers, as the issuer of Rowe's performance bond. Oakview claims that, in the event Plaintiff prevails on its claims, then Rowe is liable to Oakview for breach of the subcontract and indemnity, and Travelers is liable under the performance bond.

**Motion to Dismiss**

**A.     Process and Service of Process**

Rowe and Travelers first seek dismissal of the Third Party Complaint under Rule 12(b)(4) and (5) on the grounds that Oakview's process was insufficient because a copy of Plaintiff's petition was not included, and that service of such process was insufficient. In response to this contention, Oakview undertook to cure the alleged deficiencies by obtaining and serving alias summonses and

---

[1] The Court accepts Oakview's allegations in its Notice of Removal and Answer, but notes that the business location shown in the contracts and stated in its brief is Nebraska. This difference is immaterial to the existence of subject matter jurisdiction and, as discussed below, does not affect the issue of venue.

then asserting in its brief that this aspect of the Motion is "moot." *See* Def.'s Resp. Br. [Doc. 33] at 4. The movants do not disagree with this assertion in their reply brief. Therefore, the Court finds no basis for dismissal of the Third Party Complaint based on insufficient process or insufficient service of process.

**B.    Personal Jurisdiction**

The movants seek dismissal of the Third Party Complaint under Rule 12(b)(2) based on an alleged lack of personal jurisdiction over Rowe for claims related to a construction project in Illinois. Rowe asserts that it had no contacts with the State of Oklahoma related to the construction project and there is no factual basis for an exercise of general jurisdiction. Rowe relies on the case record and affidavits submitted with its Motion. Oakview has responded in kind, relying on contract documents and the affidavit of its project manager, Mark Wall. Oakveiw contends that specific jurisdiction exists for its third party action against Rowe but, alternatively, any jurisdictional problem can be cured by simply transferring the case to Illinois, as requested by Rowe. Because jurisdiction is a threshold issue, the Court declines Oakview's invitation to transfer the case without deciding the Rule 12(b)(2) Motion.[2]

**1.    Standard of Decision**

Oakview, as the plaintiff in the Third Party Complaint, has the burden of establishing personal jurisdiction over Rowe. *Intercon, Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where, as here, the issue is presented for decision without an evidentiary hearing on the basis of

---

[2] "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979). Oakview presents no persuasive reason for reversing this dispositional order.

affidavits and other written materials, Oakview "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted); *see Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010); *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). At this stage, the Court must accept uncontroverted factual allegations as true and resolve all factual disputes in Oakview's favor. *See Employers*, 618 F.3d at 1159; *Rusakiewicz*, 556 F.3d at 1100; *Intercon*, 205 F.3d at 1247; *Kuenzle*, 102 F.3d at 456; *Far West*, 46 F.3d at 1075.

To establish personal jurisdiction of a nonresident defendant, "'a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'" *Employers*, 618 F.3d at 1159; *Far West*, 46 F.3d at 1074. Under Oklahoma law, the personal jurisdiction inquiry is simply a federal due process analysis. *Intercon*, 205 F.3d at 1247; *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

Oakview may satisfy the "minimum contacts" standard by establishing specific jurisdiction,[3] which exists "if a 'defendant has "purposefully directed" his activities at residents of the forum . . . *and* the litigation results from alleged injuries that "arise out of or relate to" those activities.'"

---

[3] Oakview does not rely on general personal jurisdiction, which requires "continuous and systematic" contacts between a defendant and the forum state. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *OMI Holdings*, 149 F.3d at 1091.

*Kuenzle*, 102 F.3d at 455 (quoting *Burger King*, 471 U.S. at 472) (emphasis added in *Kuenzle*); *see Intercon*, 205 F.3d at 1247; *OMI Holdings*, 149 F.3d at 1091; *see also Employers*, 618 F.3d at 1160. To satisfy the first prong, Oakview must demonstrate that Rowe "'purposefully directed' its activities at the forum state . . . or 'purposely availed' itself of the privilege of conducting activities . . . in the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). Purposeful availment generally requires affirmative conduct by the nonresident defendant that creates a substantial connection to the state; unilateral activity of others is insufficient. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *Far West*, 46 F.3d at 1075; *see also Dudnikov*, 514 F.3d at 1073-74; *OMI Holdings*, 149 F.3d at 1092.

"The application of [due process] standards to contracts made between citizens of different states is not without difficulty" but is guided by the Supreme Court's opinion in *Burger King. See Rainbow Travel Service, Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1237 (10th Cir. 1990). The Supreme Court in *Burger King* "rejected the notion that personal jurisdiction might turn on 'mechanical' tests . . . or on 'conceptualistic . . . theories of the place of contracting or of performance . . . .'" *Burger King*, 471 U.S. at 478; *see Far West*, 46 F.3d at 1075. "In order to assess whether minimum contacts occurred in a contract case, we look at 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *AST Sports Science, Inc. v. CLF Distrib. Ltd*. 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479)). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but additional facts that demonstrate the pursuit of an ongoing business relationship will support jurisdiction. *See id*. at 1059.

Applying the *Burger King* factors in *Rainbow Travel*, the court of appeals found sufficient contacts with Oklahoma by an owner and operator of a Florida hotel for an action concerning the hotel's failure to honor reservations made by an Oklahoma travel agency. The hotel solicited the agency's business, carried out negotiations with the agency in Oklahoma by correspondence and telephone, sent two contracts to Oklahoma for execution, and expected partial performance in Oklahoma to the extent advance payments were anticipated and made. *Rainbow Travel*, 896 F.2d at 1238. More recently, in *Pro Axess, Inc. v. Orlux Distrib., Inc*., 428 F.3d 1270, 1277-78 (10th Cir. 2005), the court of appeals found sufficient contacts with Utah by a French company for an action concerning a contract to supply Asian-manufactured sunglass frames. The French company solicited a Utah corporation's assistance in procuring the frames; necessary services were to be performed in Utah (the choice of a manufacturer, arrangements for manufacture and shipment, and invoices); and fulfilling the contract required a continuing business relationship conducted by telephone, letter, and fax. *Id*.

**2.     Analysis**

Oakview's action against Rowe arises from a subcontract for work to be performed solely in Illinois. Oakview relies on the following facts to establish specific jurisdiction over Rowe in Oklahoma: Oakview is a prime contractor located in Omaha, Nebraska, and engaged in the business of commercial construction projects. In April, 2007, Plaintiff and Oakview signed a contract to build a new travel stop in LeRoy, Illinois. The first page of the contract clearly identifies Plaintiff as the project's owner and as an Oklahoma corporation with offices in Oklahoma City; it similarly identifies the architect for the project as an Oklahoma company with offices in Oklahoma City. The project's design was prepared in Oklahoma by Oklahoma-based architects. Later in April, 2007, Oakview and Rowe signed a written subcontract for site demolition, dirt work and grading, concrete,

6

and asphalt paving work on the project. The subcontract expressly stated that Rowe would be bound by the contract documents, including the prime contract between Plaintiff and Oakview, and that Plaintiff's architect had prepared contract documents. The subcontract also required Rowe to prepare and provide written submissions to Oakview regarding Rowe's proposed work. These submissions were forwarded to the architect, who reviewed and approved them in Oklahoma before returning them to Oakview. After the project was completed and paving problems arose, Rowe took the position that the problems were caused by a deficient design, previously prepared in Oklahoma.

Based on these alleged facts, which are taken as true, the Court finds Oakview has failed to make a minimally sufficient showing that Rowe purposefully directed its activities at the State of Oklahoma. Oakview does not contend that the subcontract itself, or any negotiations concerning it, had any meaningful connection to Oklahoma. There is similarly no contention that Rowe contemplated performing, or did perform, any necessary steps to complete its responsibilities under the subcontract in Oklahoma. From the contract documents, Rowe knew that the owner and the architects for the project were located in Oklahoma, but there is no contention that Rowe had any direct contact with them. Notably, Oakview does not contend that <u>Rowe</u> submitted any documents to anyone in Oklahoma or that Rowe received any payments in Oklahoma. Rather, from the record presented, it appears the subcontract between Oakview and Rowe concerned a discrete project to be performed wholly outside of Oklahoma.[4] Oakview has failed to establish that Rowe contemplated any ongoing business relationship with an Oklahoma resident or any contract-related activities within the state. Accordingly, the Court finds that Rowe's subcontract with Oakview and Rowe's work on the project in Illinois lacked any substantial connection to Oklahoma such that

---

[4] Rowe has presented facts and evidence to show that it had no direct contact with Plaintiff but dealt exclusively with representatives of Oakview, used only Illinois suppliers and vendors, and received payment only from Oakview.

7

specific jurisdiction would exist in Oklahoma for a controversy arising from Rowe's performance of the work under the subcontract.

For these reasons, the Court concludes that Oakview has failed to make a *prima facie* showing that specific jurisdiction exists for its third party action against Rowe. Oakview has failed to show that Rowe purposely directed activities at Oklahoma and that this action arises out of and relates to those activities. Under the facts alleged by Oakview, any contacts by Rowe with the State of Oklahoma in regard to the subcontract and its work on the project were "random, fortuitous, or attenuated" and were such that Rowe should not "reasonably anticipate being haled into court" here. *Burger King*, 471 U.S. at 486; *Pro Axess*, 428 F.3d at 1279. Therefore, the Court finds insufficient contacts to support the exercise of personal jurisdiction over Rowe in this case.

Notwithstanding this finding, however, the Court concludes that it must address the movant's alternative request, in which Oakview has joined, to transfer the entire action to another forum where it could have been brought. This conclusion is based on the fact that the movants seek a dismissal of the Third Party Complaint based on a jurisdictional defect regarding only one of the third party defendants. They provide no reason why the third party action cannot proceed solely against Travelers, and offer no legal authority requiring a dismissal of the Third Party Complaint in the absence of Rowe.[5] Instead, the movants expressly request "if the Third Party Complaint is not dismissed that this case be transferred to the United States District Court for the Central District of Illinois." *See* Third Party Defs.' Motion [Doc. 22] at 25. Because the movants have shown no basis

---

[5] The movants have made no reply to Oakview's contention that a dismissal of Rowe for lack of jurisdiction would be unjust because it would require Oakview to pursue the third party action solely against Travelers in this case and to commence a separate, duplicative proceeding against Rowe in Illinois. *See* Def.'s Resp. Br. [Doc. 33] at 10.

for dismissal of the Third Party Complaint in its entirety, the question of whether the action against Rowe should be transferred to a proper forum, rather than dismissed, must be addressed.

**C.      Venue**

The movants also seek dismissal of the Third Party Complaint for improper venue under Rule 12(b)(3). Applying the general venue statute, 28 U.S.C. § 1391, they contend this judicial district is not a proper venue for Oakview's action against Rowe. Only Plaintiff has opposed this contention, asserting that "[a] third party defendant has no standing to object to venue." *See* Pl.'s Resp. Br. [Doc. 32] at 3. In reply, the movants note that Oakview has also objected to venue by raising this defense in its Answer and by advocating a transfer in its response brief.

Although not a matter of standing, Plaintiff is correct that the third party action is an ancillary proceeding that is incidental to the main action and thus requires no independent basis of subject matter jurisdiction or venue. *See United States v. Acord*, 209 F.2d 709, 712, 714 (10th Cir. 1954); *see also First Golden Bancorporation v. Weiszmann*, 942 F.2d 726, 730 (10th Cir. 1991). Despite Oakview's assertion of a venue objection in its Answer, no party argues in their current motion papers that this district is an improper venue for the main action between Plaintiff and Oakview. Any such contention would be untenable because federal removal statutes determine the proper venue for a removed case. Because this action was removed from a state court within this judicial district, venue is proper under 28 U.S.C. § 1446(a). Therefore, the Court finds no basis for dismissal of the Third Party Complaint for improper venue.

**Motion to Transfer**

The movants contend this action should be transferred pursuant to 28 U.S.C. § 1404(a) to a more convenient forum where it could have been brought.[6] As with the venue objection, Plaintiff asserts that third party defendants "lack standing to pursue a motion to transfer venue" because the "venue statutes are not applicable to third-party claims." *See* Pl.'s Resp. Br. [Doc. 32] at 5, 8. This argument is contrary to Tenth Circuit case law, cited in Plaintiff's brief, holding that an action may be transferred under § 1404(a) at the request of a third party defendant. *See Chrysler*, 928 F.3d at 1518-19 (absent a Rule 21 severance, transfer sought by a third party defendant effected a transfer of the entire case and not merely the third party action). Any party, or the court acting on its own motion, may raise the issue of whether a change of venue would be in the interest of justice. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996) (interest of justice mandated a transfer of venue even without a § 1404(a) motion); *see also Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) ("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes . . . when it is in the interests of justice."). In any event, Oakview has joined the Motion to Transfer. *See* Def.'s Resp. Br. [Doc. 33] at 11.

Plaintiff also opposes the Motion to Transfer on the ground that Rowe has failed to justify the requested transfer.[7] It is undisputed that this action could have been brought in the Central District of Illinois, but Plaintiff asserts that the movants have made an insufficient factual showing

---

[6] Because a jurisdictional defect exists as to Rowe, the transfer of the third party action is more appropriately governed by 28 U.S.C. § 1631, which authorizes a district court to transfer a civil action when the "court finds that there is a want of jurisdiction . . . if it is in the interest of justice." Like the curative venue statute alternatively cited by the movants, 28 U.S.C. § 1406(a), this statute directs a transfer "to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631.

[7] Plaintiff has not asked to respond to Oakview's arguments in support of a transfer.

to warrant a transfer that would deprive Plaintiff of its chosen forum.[8] Alternatively, Plaintiff argues that the Third Party Complaint should be severed from the action under Fed. R. Civ. P. 21 and only the third party action should be transferred.

**A.     Permissive Transfer of Venue**

"The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). The court of appeals has directed district courts considering a § 1404 transfer to "weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical."

*Id*. (quoting *Chrysler*, 928 F.2d at 1516).

Generally, the first factor weighs heavily against a transfer; "'the plaintiff's choice of forum should rarely be disturbed'" unless the balance of factors strongly favors the movant. *Id*. at 1167-68 (quoting *Scheidt*, 956 F.2d at 965). However, the court of appeals has recognized exceptions to this rule. For example, courts may "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Id*. at 1168. In this case, Plaintiff clearly prefers for the case to remain in a federal court in Oklahoma, where its principal place of business is located. Although not mentioned by Plaintiff,

---

[8] In making this argument, the Court assumes Plaintiff refers generally to a court within the State of Oklahoma, since Plaintiff did not choose this federal forum.

the Court notes that the prime contract and the project have some connection to Oklahoma, as demonstrated by Oakview in its effort to establish personal jurisdiction here. Thus, Plaintiff's choice of forum weighs strongly in favor of retaining the case in this district.

Upon careful consideration, however, the Court finds that the movants and Oakview have shown even more strongly why the requested transfer should be granted. The alleged breaches of contract and warranty and the negligence claimed by Plaintiff occurred in LeRoy, Illinois, within the Central District of Illinois. The physical evidence of, and material witnesses to, the alleged defects are located there. The movants contend – and no party disputes – that public roadways in Illinois were involved in the project and affected by the work. This contention is supported by the allegations of Plaintiff's pleading, which states that the Mayor of LeRoy, Illinois, made an official demand to remedy the conditions of the roadways and caused Plaintiff to hire a third party to make temporary repairs. *See* Petition [Doc. 1-2], § 16. Many key witnesses in Illinois will be needed to testify about such things as the soil conditions and paving subsurface, the materials used in the project and on city streets, the traffic and load volume, the City of LeRoy's oversight of the project and issuance of a citation, and Oakview's supervision of the project. *See* Goeken Aff. [Doc. 37-2], ¶ 14. All of these witnesses are beyond the subpoena power of this Court. Further, because the Court lacks personal jurisdiction of Rowe, the parties would be forced to engage in duplicative litigation in separate forums, multiplying the costs of the proceedings and creating a possibility of inconsistent results. In fact, Plaintiff makes no contention that any factor other than its choice of forum or convenience to its representatives weighs in favor of litigating the case here.[9]

---

[9] The Court notes a similar result reached recently in *Nalco Co. v. Environmental Management, Inc.*, 694 F. Supp. 2d 994 (N.D. Ill. 2010), which involved an environmental cleanup project in Mississippi. The prime contractor filed third party complaints against subcontractors who performed the contract. The district court rejected the plaintiff's position that the third party defendants lacked standing to seek a change of venue,
(continued...)

In short, in view of the strong showing that a transfer of venue would serve the interest of justice, the Court finds that the Motion to Transfer should be granted and that this case should be transferred to the Central District of Illinois.

**B.      Rule 21 Severance**

Plaintiff suggests that a severance of the third party action and a transfer of only that portion of the case would cure any problem. Plaintiff does not explain how its proposed remedy would avoid duplicative litigation, inconvenience of witnesses, and limited accessibility of nontestimonial evidence. Because Plaintiff's action and the third party action are intertwined, the Court finds that Plaintiff has failed to justify a severance of the two actions into separate cases.

IT IS THEREFORE ORDERED that Third Party Defendants' Motion [Doc. No. 22] is granted in part and denied in part. The Motion to Dismiss is DENIED but the alternative Motion to Transfer is GRANTED. This case is transferred to the United States District Court for the Central District of Illinois.

IT IS SO ORDERED this 19th day of November, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[9](...continued)
and found that a § 1404(a) transfer to Mississippi was warranted. Although the prime contract was made in Illinois, the accessibility of witnesses and sources of proof in Mississippi warranted the transfer.